UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Albert L. Johnson,<br><br>            Petitioner,<br><br>v.<br><br>M. Anderson, Warden; United States Parole Commissioner; and United States of America,<br><br>            Respondents. | Civil No. 07-599 (RHK/SRN)<br><br><br><br>**REPORT AND RECOMMENDATION** |

Albert L. Johnson, pro se

Tricia A. Tingle, Assistant United States Attorney, for Respondents

---

SUSAN RICHARD NELSON, United States Magistrate Judge.

This matter is before the undersigned United States Magistrate Judge on Petitioner Albert L. Johnson's application for habeas corpus relief under 28 U.S.C. § 2241 (Doc. No. 1), Petitioner's Motion Giving Course Why Writ Must Be Granted (Doc. No. 7), and Petitioner's Motion for Summary Judgment (Doc. No. 12). The matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. For the reasons discussed below, the Court recommends that the petition be dismissed with prejudice and that the motions be denied.

**I.      BACKGROUND**

Petitioner is an inmate at the Federal Medical Center in Rochester, Minnesota. He is presently incarcerated as a result of a decision by the United States Parole Commission ("Commission") on December 15, 2005, to revoke his parole and continue his incarceration to

the expiration of his sentence.

On March 16, 1976, the United States District Court for the Northern District of Illinois sentenced Petitioner to twenty years in prison with three years of special parole, after Petitioner was convicted of distributing cocaine, conspiring to distribute cocaine, and carrying a firearm in the commission of a felony. Petitioner was released on parole on May 2, 1983, and was to remain on parole supervision until January 31, 1996.

Less than two years after his release, Petitioner was arrested and charged with two counts of aggravated battery in Chicago, Illinois. Based on this arrest, the Commission issued a federal warrant for Petitioner on March 21, 1985, charging him with aggravated battery and unauthorized possession of a firearm. In 1986, the Commission learned that Petitioner had been convicted of two counts of attempted murder and sentenced to forty years imprisonment by the State of Illinois. The Commission lodged its warrant for Petitioner as a detainer with the Illinois Department of Corrections.

The Commission advised Petitioner on January 16, 1986, that it would conduct a record review of the detainer. Petitioner was appointed counsel, and he submitted information for the Commission's review. The Commission decided the warrant would remain lodged as a detainer.

Petitioner completed his state sentence on June 8, 2005, and was taken into federal custody by the United States Marshals Service. Petitioner was notified that the Commission had probable cause to believe he had violated the conditions of his parole, and he was designated to a federal institution for a revocation hearing. The Commission sent forms to Petitioner for his response to the charges, but Petitioner did not file a response.

Prior to the revocation hearing, a United States Marshal notified the Commission that

Petitioner had been inappropriately communicating with a United States District Court Judge for several years, and that the Marshals Service had opened an investigation in the matter.

The revocation hearing occurred on November 28, 2005. Petitioner attended and was represented by an Assistant Federal Public Defender. Petitioner argued that he had been unjustly convicted of attempted murder and that the revocation hearing was untimely. The hearing examiner rejected both of these arguments. The hearing examiner determined that Petitioner had committed the offenses of attempted murder, aggravated battery, and unauthorized possession of a firearm while on parole, and the examiner assessed a minimum parole violation sentence of more than 150 months for the attempted murder offense. The hearing examiner recommended that Petitioner's incarceration be continued to the expiration of his sentence because he posed a more serious risk than the salient factor score indicated, based on the two attempted murders while on parole and a prior conviction of murder when Petitioner was fifteen years old.

The Commission issued a decision on December 15, 2005, revoking Petitioner's parole and continuing his incarceration until the expiration of his sentence. The Commission advised Petitioner that its decision was more than the minimum guideline sentence of 150 months because his parole violation consisted of the attempted murder of two individuals, as well as his juvenile conviction for attempted murder.[1] The Commission also imposed special conditions of release which would require Petitioner to participate in drug and mental health aftercare treatment.

Petitioner appealed the Commission's decision on January 1, 2007, and filed the present

---

[1] The Commission corrected the hearing examiner's finding that Petitioner had been convicted of murder at age fifteen.

habeas petition on January 29, 2007. Respondents answered the petition on March 2, 2007. The Commission's decision on appeal was due on March 18, 2007, but neither party has advised the Court of the outcome of the appeal.

In his petition, Petitioner alleges the following grounds for relief: (1) that he was held in custody without a warrant or hearing from June 8, 2005 until November 28, 2005; (2) that the hearing examiner was biased and was improperly influenced by the presence of two individuals at the revocation hearing; (3) that the hearing examiner should not have considered Petitioner's juvenile conviction; (4) that the hearing examiner wrongly concluded that the State of Illinois convicted Petitioner of possession of a firearm; (5) that Petitioner has already served more than the parole guidelines sentence of thirty-six to forty-eight months; (6) that the State of Illinois' conviction and sentence were illegal; and (7) that the Commission had no basis to impose special conditions for drug and mental health aftercare. In their response to the petition, Respondents argue that Petitioner failed to exhaust his administrative remedies because his appeal of the Commission's decision was not received until January 18, 2007, which was more than a year after the deadline to file an appeal. Respondents also addressed the merits of each of Petitioner's claims.

Petitioner has since filed several additional documents. First, Petitioner filed a "Motion Giving Course Why Writ Must Be Granted" (Doc. No. 7), which essentially asks the Court to grant his petition. In a later Reply (Doc. No. 8), Petitioner characterizes the exhaustion argument as frivolous and notes that he filed an administrative appeal of the Commission's decision. Although it is not entirely clear from the record before the Court, Petitioner apparently claims that he did not receive the Commission's December 15, 2005 decision until December 26,

2006. According to Respondents, however, Petitioner has admitted to receiving the decision in July or August of 2006.  Finally, in a Supplemental Reply (Doc. No. 9), Petitioner seeks appointment of counsel and argues that he was given 249 months "prison time credits," which should be "parole time credits" deducted from the 150 months he has been ordered to serve.  He asks this Court to "solidify the 249 months credit."  Finally, Petitioner filed a Motion for Summary Judgment (Doc. No. 12) on June 25, 2007, repeating his arguments that the parole violation sentence exceeds the guidelines and that he is incarcerated in violation of federal law.

## II.     DISCUSSION

### A.     Exhaustion of Administrative Remedies

Federal prisoners must exhaust their available administrative remedies before seeking habeas relief pursuant to 28 U.S.C. § 2241.  Kendrick v. Carlson, 995 F.2d 1440, 1447 (8th Cir. 1993).  The administrative remedy available to challenge a decision of the Commission is an appeal to the National Appeals Board.  28 C.F.R. § 2.26.  Respondents allege that Petitioner did not timely file his administrative appeal.

Although Petitioner's administrative appeal was untimely, he gave the National Appeals Board the opportunity to address his claims.  See Cohee v. FCI Seagoville, No. 3-02-CV-2293-P, 2003 WL 203100 (N.D. Tex. Jan. 28, 2003) (holding that a petitioner must continue to pursue administrative remedies, even if untimely).  The decision on Petitioner's untimely appeal was due on March 18, 2007.  Therefore, the Court presumes that the appeal process has been completed, and the Court will address the petition on the merits.  See Wilson v. U.S. Parole Comm'n, 460 F. Supp. 73, 76 (D. Minn. 1978) (addressing untimely habeas petition once appeal process was completed because petitioner had then exhausted his administrative remedies).  In

the alternative, the Court finds that the exhaustion requirement is not strictly required, and it would be appropriate in this case to proceed to the merits. See Wallace v. Morrison, Civ. No. 05-435 (JNE/SRN), 2006 WL 1579854, at *2 (D. Minn. June 1, 2006) (addressing unexhausted claims in § 2241 habeas proceeding because exhaustion was not a statutory or jurisdictional requirement and merits were easily resolved).

### B. Appointment of Counsel

Although Petitioner did not expressly move for appointed counsel, he did raise the issue in his supplemental reply, and the Court will address the request. As a civil litigant, Petitioner is not entitled to appointment of counsel. See Stevens v. Redwing, 146 F.3d 538, 546 (8th Cir. 1998). However, the Court can appoint counsel to a financially eligible person when the interests of justice so require. See 18 U.S.C. § 3006(a)(2)(B). In determining whether to appoint counsel in a case involving nonfrivolous claims, the Court considers the legal and factual complexity of the case, Petitioner's ability to investigate and present his claims, and any other relevant factors. See Abdullah v. Norris, 18 F.3d 571, 573 (8th Cir. 1994).

Petitioner has presented several nonfrivolous claims. The Court therefore proceeds to the question of whether the interests of justice require that Petitioner be appointed counsel. Although this case presents a lengthy procedural history, Petitioner has demonstrated that he understands the legal issues related to his claims. The due process requirements for a revocation hearing are not legally complex, nor are the facts relating to the Commission's parole revocation decision. Petitioner has demonstrated an ability to represent himself by adequately presenting the factual and legal bases for multiple claims in his petition and in subsequent filings. The Court finds that the interests of justice do not require appointment of counsel in this case and

recommends that the motion be denied.

### C. Petitioner's Claims

The scope of a court's review of a parole revocation decision by the Commission is very narrow. The Court lacks jurisdiction "to review the substantive decisions of the Commission to grant or deny parole." Jones v. U.S. Bureau of Prisons, 903 F.2d 1178, 1183 (8th Cir. 1990). Rather, the Court may review the Commission's actions only "to determine whether they are unconstitutional or exceed the scope of the Commission's authority." Malave v. Hedrick, 271 F.3d 1139, 1140 (8th Cir. 2001) (citing Jones, 903 F.2d at 1184).

### 1. Federal Custody Without a Hearing

After Petitioner completed his state sentence, he was taken into federal custody on June 8, 2005, pursuant to the Commission's warrant. Petitioner was designated to a federal institution for a revocation hearing and was notified that the Commission had probable cause to believe he had violated the conditions of his parole. He did not receive a preliminary hearing. Petitioner's revocation hearing occurred on November 28, 2005, more than five months after he was placed in federal custody.

If a person on parole is convicted of a criminal offense committed while on parole, and that person has been sentenced, the Commission may lodge its warrant against him as a detainer. 18 U.S.C. § 4214(b)(1).[2] Once the detainer is placed and the Commission is notified, it must review the detainer within 180 days. Id. The parolee must be given notice of the review and an opportunity to respond in writing. Upon review, the Commission may let the detainer stand or

---

[2] Title 18 U.S.C. § 4214 was repealed on October 12, 1984, but remained in effect for eighteen years after November 1, 1987. See Pub. L. 98-473, tit. II, §§ 218(a)(5), 235(a)(1), 98 Stat. 2027, 2031 (1984).

withdraw the detainer. 28 C.F.R. § 2.47(c). The Commission does not have a constitutional duty to conduct a revocation hearing until the offender is taken into custody as a parole violator. Moody v. Daggett, 429 U.S. 78, 89 (1976). Once the offender is in custody, he is entitled to a revocation hearing within ninety days. 18 U.S.C. § 4214(c).

Absent a showing of prejudice, the only remedy for a delayed hearing is an order to conduct the hearing. Northington v. U.S. Parole Comm'n, 587 F.2d 2, 3 (8th Cir. 1978). Here, Petitioner received notice and was given an opportunity to respond in writing when the Commission first lodged its warrant as a detainer in January 1986. The Commission acted within its authority to take Petitioner into custody, pursuant to the warrant, after he completed his state sentence in June 2005. Before the revocation hearing, Petitioner received a packet of information with the charges the Commission would be considering and supporting documentation. At the hearing, Petitioner did not object to the notice he received or request a continuance in order to prepare for the hearing.

Respondents do not deny that the revocation hearing was untimely. The hearing should have been held on or before September 6, 2005, which was ninety days after Petitioner was taken back into federal custody. However, Petitioner has not shown that the delayed hearing prejudiced him in any manner. Moreover, the hearing has already taken place, and an order to conduct a hearing would therefore be futile. Therefore, Petitioner is not entitled to relief on this claim.

### 2. The Revocation Hearing and Hearing Examiner Bias

Petitioner alleges that several improprieties occurred at the November 28, 2005 revocation hearing. He contends that the hearing examiner was improperly biased after the

examiner heard allegations from a United States Marshal that Petitioner had improperly contacted a judge. He also notes that Robert Moore, a corrections counselor, was present at the hearing, and that Mr. Moore was the man Petitioner shot as a juvenile. Lastly, Petitioner alleges that the United States Marshal present at the hearing, Nick Trutanko, was one of the two Assistant State Attorneys who prosecuted him for attempted murder.

The United States Supreme Court set forth the minimum due process requirements for parole revocation hearings in Morrissey v. Brewer, 408 U.S. 471 (1973). The pertinent requirement with respect to Petitioner's allegation of bias on the part of the hearing examiner is the right to a neutral and detached hearing officer. Id. at 488. A hearing examiner is presumed to be honest and principled. Sacco v. U.S. Parole Comm'n, 639 F.2d 441, 443 (8th Cir. 1981). Here, Petitioner has offered absolutely no support for his allegation that the hearing examiner was biased by information that Petitioner had improperly contacted a judge, and the Court finds this claim wholly without merit.

Likewise, there is no evidence in the record to support Petitioner's contentions that Robert Moore was the man Petitioner shot as a juvenile or that Nick Trutanko prosecuted Petitioner. Furthermore, even if Mr. Moore and Mr. Trutanko were the people Petitioner alleges them to be, there is no evidence that the hearing examiner was aware of their identities or that their presence affected the hearing examiner's decision in any way. Thus, Petitioner has failed to show that Mr. Moore's and Mr. Trutanko's presence at the hearing improperly influenced the hearing examiner.

### 3. The Hearing Examiner's Consideration of Petitioner's Juvenile Record

Petitioner asserts that the hearing examiner erred in considering his juvenile conviction. Respondents respond that Petitioner's presentence report contained information about his juvenile record, and the Commission therefore properly considered it.

Anything in a presentence report may be considered in making a parole revocation determination. Robinson v. Compton, 47 F. App'x 768, 770 (7th Cir. 2002) (due process not violated where petitioner had notice and opportunity to address information concerning juvenile record contained in presentence report); see also Melvin v. Petrovsky, 720 F.2d 9, 11 (8th Cir. 1983) (citing 18 U.S.C. § 4207(3)). Past convictions, including juvenile convictions, may be considered by the Commission in calculating a salient factor score. See Iron Cloud v. U.S. Parole Comm'n, No. 93-1350, 1994 WL 36775, at *2 (10th Cir. Feb. 8, 1994) (citing 28 C.F.R. § 2.20, Instr. A.6). Thus, the Commission did not violate Petitioner's right to due process by considering information in his juvenile record contained in his presentence report.

### 4. The Hearing Examiner's Finding that Petitioner Was Convicted of Possessing a Firearm

Petitioner alleges that the hearing examiner was incorrect in finding that the State of Illinois convicted him of possessing a firearm, in addition to attempted murder. It is true that Petitioner was not convicted of possessing a firearm. However, the Commission can consider an unadjudicated criminal charge in making a revocation decision. Perry v. U.S. Parole Comm'n, 831 F.2d 811, 813 (8th Cir. 1987). In addition, the Commission has the authority to make independent findings of criminal conduct. Whitehead v. U.S. Parole Comm'n, 755 F.2d 1536,

1537 (11th Cir. 1985). Here, Petitioner was convicted of attempted murder after he shot two people with a gun. Given that Petitioner used a gun to commit the offense of attempted murder, the Commission's finding that Petitioner was in possession of a firearm was not a violation of Petitioner's constitutional rights or beyond its scope of authority. Petitioner is not entitled to habeas relief on this claim.

### 5. The Parole Guidelines

Petitioner alleges that when he was initially released on parole on May 2, 1983, he had already served thirty-two months more than the parole guidelines sentence of thirty-six to forty-eight months. Respondents reply that, because Petitioner had been sentenced pursuant to 18 U.S.C. § 4205(a), Petitioner could not be granted parole until he had served one-third of his twenty-year sentence, which was eighty months. Respondents also reject Petitioner's attempt to apply the thirty-two months he served above the parole guidelines before his release on parole to reduce his present parole sentence.

First, Petitioner has not shown that he erroneously served an additional thirty-two months on his initial sentence because he was required to serve one-third of his sentence before becoming eligible for release. Title 18 U.S.C. § 4205(a) provides: "[w]henever confined and serving a definite term or terms of more than one year, a prisoner shall be eligible for release on parole after serving one-third of such term or terms or after serving ten years of a life sentence or of a sentence of over thirty years, except to the extent otherwise provided by law." Petitioner was sentenced to twenty years in 1976, and one-third of twenty years is eighty months.

Second, even if Petitioner erroneously served an additional thirty-two months on his initial sentence, he has not shown that the Constitution or laws of the United States require that

he receive credit for such time against a subsequent parole violation. Indeed, some courts have found that this practice would provide an incentive for misconduct. See Johnson v. Riveland, 855 F.2d 1477, 1483 (11th Cir. 1988); Bryant v. Warden, 776 F.2d 394, 396-97 (2d Cir. 1985).

Third, Petitioner cannot challenge the Commission's decision to sentence him above the parole guidelines because such a decision is a substantive decision not reviewable by this Court. See Jones, 903 F.2d at 1183.

### 6. Petitioner's Collateral Challenge to His State Court Convictions

Petitioner was convicted and sentenced to twenty years for attempted murder in the State of Illinois. He has already challenged this conviction and sentence, and he cannot relitigate them in this habeas proceeding. See Morrissey, 408 U.S. at 490.

### 7. Special Conditions of Drug and Mental Health Aftercare

Petitioner alleges that the Commission's imposition of drug and mental health treatment conditions after his mandatory release violates his rights to due process and equal protection. Respondents reply that the Commission is authorized to impose special conditions for release, and that the determination of reasonable conditions is committed solely to the Commission's discretion.

A prisoner released on mandatory release is "deemed as if released on parole" and must abide by special conditions imposed by the Commission. 18 U.S.C. § 4164. The Commission can impose special conditions that are "reasonably related to the nature and circumstances of the offense; and the history and the characteristics of the parolee; and may provide for such supervision and other limitations as are reasonable to protect the public welfare." 18 U.S.C. § 4209(a). The Commission has broad discretion to modify conditions of mandatory release at

any time. 28 C.F.R. § 2.40(b).

The Commission's imposition of mental health aftercare treatment was based on the finding that Petitioner had improper contact with a judge for several years. The treatment was imposed for the protection of the public and the judge. The Commission did not violate Petitioner's constitutional rights or exceed the scope of its authority in imposing mental health treatment as a special condition of release. The Commission also imposed drug aftercare treatment as a special condition. Petitioner's original federal offense was for conspiracy to distribute cocaine, and Petitioner's parole date was rescinded on two occasions for drug use while he was incarcerated. The Commission properly imposed this special condition as well.

### 8. Prison Credit Time

Petitioner asks the Court to credit the 249 months he served from March 8, 1985 to June 8, 2005 on his state sentence against his parole violation sentence, which would entitle him to release.

> [I]f a parolee has been convicted of a new offense committed subsequent to his release on parole, which is punishable by any term of imprisonment, detention, or incarceration, in any penal facility, forfeiture of time from the date of such release to the date of execution of the warrant is an automatic statutory penalty, and such time shall not be credited to the service of the sentence . . . .

28 C.F.R. § 2.52(c)(2) (interpreting 18 U.S.C. § 4210(b)(2), which establishes the Commission's jurisdiction over parolees). This interpretation has been found reasonable. United States ex rel Del Genio v. U.S. Bureau of Prisons, 644 F.2d 585, 588 (7th Cir. 1980) (examining congressional intent); see also Buchanan v. U.S. Bureau of Prisons, 133 F. App'x 465, 467 (10th Cir. 2005) (denying credit for time spent in state prison against federal sentence for parole violation). Because Petitioner's parole was revoked based on a new conviction punishable by

13

imprisonment, he was required to forfeit all of the time previously spent on parole, including his time in state prison. Petitioner is not entitled to credit against his parole violation sentence for time served on his state prison sentence.

## IV. RECOMMENDATION

Based upon the foregoing and all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. The Petition for Habeas Corpus Relief (Doc. No. 1) be **DENIED**;

2. Petitioner's Motion Giving Course Why Writ Must Be Granted (Doc. No. 7) be **DENIED**;

3. Petitioner's informal request for appointment of counsel (Doc. No. 10) be **DENIED**; and

4. Petitioner's Motion for Summary Judgment (Doc. No. 12) be **DENIED**.


Dated: December 19, 2007

                                            s/ Susan Richard Nelson
                                            SUSAN RICHARD NELSON
                                            United States Magistrate Judge


Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **January 4, 2008**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within ten days after service thereof. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.